## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

JOSE FAVIO MOLINA JEREZ,                    Civil No. 10-CV-4498 (JRT/LIB)

   Plaintiff,

v.                                          **REPORT & RECOMMENDATION**

ERIC H. HOLDER, JR. ATTORNEY
GENERAL, IN HIS OFFICIAL CAPACITY
AS HEAD OF THE DEPARTMENT OF
JUSTICE, ET. AL.

   Defendants,

---

  This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendants to Dismiss the Amended Complaint, or in the alternative, to Transfer Venue. A hearing on the Motion was conducted on July 15, 2011.  The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1).  For reasons outlined below, the Court recommends that the Defendants' motion be denied.

## I. BACKGROUND

  Plaintiff's claims arise from the Defendants' alleged breach of the Stipulated Class Action Settlement Agreement approved in <u>American Baptist Churches v. Thornburgh</u>, 760 F.Supp. 796 (N.D. Cal. 1991) (hereinafter "ABC Agreement") (Compl. ¶ 1).  According to the Plaintiff, the Defendants have failed to provide the Plaintiff with the rights and benefits guaranteed to him by the ABC Agreement. (Compl. ¶ 1).

  In 1991, a settlement agreement was reached in the ABC case which was a class action on behalf of Guatemalan and Salvadoran asylum applicants alleging that the Defendants had systematically violated the Refugee Act of 1990.  The ABC Agreement provided certain rights

and benefits to Guatemalan nationals present in the United States through October 1, 1990.
More specifically, the ABC Agreement grants class members special interviews, the opportunity
to apply for relief from removal, work authorizations, and freedom from detention.

The Plaintiff is a Guatemalan national who first entered the United States in 1985.
(Compl. ¶ 25).  He left the United States in August 1987, but re-entered in October 1987.  Id.  At
this time, the Government arrested the Plaintiff and instituted deportation proceedings.  Id.  In
May 1989, an immigration judge found the Plaintiff deportable.  (Compl. ¶ 26).  However, the
immigration judge allowed the Plaintiff to depart voluntarily on or before September 2, 1989.  Id.
Since the Plaintiff did not depart voluntarily by this date, the immigration order converted to a
final order of deportation.  Id.

In 1990, the Plaintiff departed the United States and returned to Guatemala where he
obtained a "cedula de vecindad" or Guatemalan identification card.  (Compl. ¶ 27).   In March
1991, the Plaintiff again entered the United States and filed an Application for Asylum on
December 30, 1991.  (Compl. ¶ 28).  On the same date, the Plaintiff filed an ABC Registration
Form.  Id.  However, the INS date stamped the Asylum Application received January 2, 1992.
Id.

Following the Defendant's application, he lived and worked in the United States from
1992 until 2008.  (Compl. ¶ 29).  Each year, the Plaintiff renewed his employment authorization
card.  Id.  Plaintiff lived with his partner and their four children.  Id.

On April 11, 2007, the Plaintiff attended an asylum interview with the United States
Citizenship and Immigration Services ("USCIS").  (Compl. ¶ 30).  The Plaintiff did not appear
with an attorney at the interview.  Id.  After the interview, the USCIS found that the Plaintiff had
not registered for ABC class membership and issued a "Notice of Ineligibility for ABC

Benefits." Id. Plaintiff notes that this decision was made prior to a change in USCIS policy liberalizing the requirements for filing documents to register for ABC class benefits. (Compl. ¶ 30). On April 24, 2007, the Plaintiff's attorney filed a motion with the USCIS to reconsider its finding that the Plaintiff did not file for ABC benefits. (Compl. ¶ 32). However, the USCIS did not consider the motion. (Compl. ¶ 33). Still, on July 6, 2007, the USCIS's own internal records showed that the Plaintiff had Group ABC status. (Compl. ¶ 34).

On April 16, 2008, Plaintiff attended another USCIS interview relating to his Asylum Application. (Compl. ¶ 35). Plaintiff contends that this interview was not conducted with the special procedures governing interviews required by the ABC Agreement. Id. Thereafter, in August 2008, Immigration and Customs Enforcement ("ICE") detained the Plaintiff believing that he had an unexecuted deportation order from 1989. (Compl. ¶ 36).

On September 9, 2008, USCIS issued a "Notice of Intent to Deny" the Plaintiff's non-ABC asylum application that did not address the Plaintiff's ABC eligibility. (Compl. ¶ 37). In response, on September 30, 2008, the Plaintiff filed for benefits under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"). (Compl. ¶ 38).[1] On November 6, 2008, USCIS denied the Plaintiff's asylum claim without addressing his ABC class membership or his NACARA eligibility. (Compl. ¶ 40). On December 3, 2008, the Plaintiff filed a Form I-246 Application for Stay of Deportation or Removal seeking adjudication of his ABC status. (Compl. ¶ 41). The claim was denied the same day. Id.

On December 4, 2008, the Plaintiff was placed on an airplane to return to Guatemala. (Compl. ¶ 42). However, pursuant to a writ of habeas corpus, the United States District Court

---

[1] At this time, the Plaintiff also filed Form I-881, an Application for Suspension of Deportation or Special Rule Cancellation of Removal, which the USCIS never adjudicated. (Compl. ¶ 39).

for the District of Nebraska granted a stay of removal. (Compl. ¶ 43). The Government returned the Plaintiff to the United States. (Compl. ¶ 44).

On January 8, 2009, the Plaintiff was served with a Decision to Reinstate Prior Deportation Order which also determined that the Plaintiff did not qualify for ABC benefits. (Compl. ¶ 46). The Plaintiff filed a petition for review of the USCIS's decision with the Eighth Circuit Court of Appeals. Id.; Molina Jerez v. Holder, 625 F.3d 1058 (8th Cir. 2010).[2] The Eighth Circuit dismissed the portion of the Plaintiff's petition asking the Court to review the Plaintiff's eligibility for NACARA relief and for ABC benefits. Molina Jerez, 625 F.3d at 1073. Specifically, the Eighth Circuit found that it lacked jurisdiction to consider the factual question of whether the Plaintiff was eligible for NACARA relief as an ABC class member. Id.[3] However, in the case before the Eighth Circuit, the Plaintiff was not bringing an action to enforce the settlement agreement as he does here.

On September 29, 2010, because of Plaintiff's reinstated order of removal, USCIS conducted an asylum interview pursuant to 8 C.F.R. § 241.8(e) to determine if Plaintiff's fear of persecution or torture was credible. (Def.'s Mem. [Docket No. 28], p. 6). While USCIS was reviewing this claim, the Plaintiff could not be removed. Id. On March 14, 2011, USCIS interviewed Plaintiff regarding his qualification as an ABC registrant. Id. USCIS concluded that the Plaintiff was not eligible for ABC benefits. (Def.'s Mem., 6-7). Additionally, on March 14, 2011, USCIS determined that Plaintiff's fear of returning to Guatemala expressed during his September 29, 2010 interview was not credible. (Def.'s Mem., p. 7). This finding was affirmed

---

[2] In addition, on February 18, 2009, the U.S. District Court for the District of Nebraska held a hearing requiring the Government to show cause why its reinstatement order was not a violation of the Court's previous order staying the Court's earlier order staying removal. On February 24, 2009, the Nebraska Court stayed the action and recommended that the Plaintiff be released pending a decision on his appeal to the Eighth Circuit. (Compl. ¶ 48).

[3] Also, in 2009, the U.S. District Court for the District of Nebraska denied another habeas corpus petition from the Plaintiff because the Plaintiff could not demonstrate that there was a significant likelihood of removal in the reasonably foreseeable future. Molina-Jerez v. Holder, Civ. No. 09-283  (D. Neb. Aug. 19, 2009), Rep. and Recommendation, November 9, 2009 [Docket No. 22] & Order, January 26, 2010 [Docket No. 23].

by an Immigration Judge on March 24, 2011.  Id. On April 28, 2011, ICE removed the Plaintiff

to Guatemala.  (Notice of Removal [Docket No. 35]).

Based on these facts, the Plaintiff seeks three types of relief.  First, the Plaintiff seeks a

declaration that the Defendants breached their obligations under the ABC Agreement by refusing

to find that the Plaintiff timely registered for ABC benefits.  (Compl. ¶¶ 67-72).  Second, the

Plaintiff requests relief under the Mandamus Act, 28 U.S.C. § 1361 compelling the USCIS to

perform a duty owed.  (Compl. ¶¶ 73-74).  Third, the Plaintiff seeks a determination under 5

U.S.C. §§ 702 and 706 that the Defendants acted contrary to law.  (Compl. ¶ 77).  Thus, the

Plaintiff requests that the Court "compel agency action unlawfully withheld or unreasonably

delayed" under § 706.  Id.

Presently before the Court is the Defendants' Motion to Dismiss.  Defendants seek to

dismiss the Complaint on three grounds.  First, the Defendants contend that this Court lacks

subject matter jurisdiction. Second, the Defendants assert that the Complaint fails to state enough

facts to constitute a claim for relief under Fed. R. Civ. P. 12(b)(6).  Lastly, the Defendants

contend that venue is improper in the District of Minnesota.  The Court will consider each

argument below.

## II.     STATUTORY BACKGROUND

In 1985, "thousands of Salvadorian and Guatemalan asylum seekers . . . filed a lawsuit

against [DHS] claiming their asylum applications had not been fairly adjudicated."  Cuadra v.

Gonzales, 417 F.3d 947, 948 (8th Cir. 2005).  A district court approved a class action settlement

resolving the dispute in ABC in which the Government "agreed not to deport class members, to

give each class member a proper de novo asylum interview, and to give class members work

authorization while they awaited these interviews." Id. However, DHS "delayed the implementation of the settlement for years." Id.

In 1996, while the Plaintiff's asylum application was pending, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) was passed.  The legislation made a number of changes to immigration law including replacing suspension of deportation with cancellation of removal and strengthening the reinstatement of removal provisions.  Molina-Jerez, 625 F.3d at 1062.  Before IIRRA, "aliens with pending asylum claims were able to apply for suspension of deportation" which granted the Government more discretion to grant permanent resident status to aliens.  Id.  But IIRRA replaced the suspension of deportation with the "much more restrictive form of immigration relief" called cancellation of removal.  Cuadra, 417 F.3d at 949.

Furthermore, before IIRRA, reinstatement of removal "was a 'little-used' provision, which 'did not apply to aliens . . . who were deported for entering the country without inspection.'"  Molina-Jerez, 625 F.3d at 642 (citing Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 862 (8th Cir. 2002)).  With the passage of IIRRA, Congress created a "broader and far less forgiving reinstatement-of-removal provision."  Alvarez-Portillo, 280 F.3d at 862.

Recognizing the harshness of these provisions upon ABC class members, Congress enacted the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA").  Section 203 of NACARA "allows ABC class members to seek relief under conditions approximated pre IIRIRA suspension of deportation" called "special rule cancellation of removal."  Cuadra, 417 F.3d at 949.   Additionally, Congress passed the LIFE Act Amendments of 2000 which "exempts ABC class members from IIRIRA's strengthened reinstatement-of-removal provision."  Molina-Jerez, 625 F.3d at 643.

Thus, the current statutory framework makes recognition as an ABC class member attractive for aliens such as the Plaintiff because they face more lenient immigration laws.

## III.    SUBJECT MATTER JURISDICTION

The Defendants make two arguments in support of their Motion to Dismiss for lack of subject matter jurisdiction.  First, the Defendants contend that the Plaintiff waived his right to challenge the USCIS determination of ABC status.  Second, the Defendants assert that the Court lacks the authority to enjoin the Defendants from removing the Plaintiff from the United States prior to the resolution of his claims by this Court.[4]  However, the Defendants' agreed at the hearing regarding the present motion that their second argument is moot since the Plaintiff has already been deported.  As such, the Court only considers the Defendants' waiver argument.

### A.    Standard of Review

Federal R. of Civ. P. 12(b)(1) allows a Defendant to seek to dismiss a claim for lack of federal subject matter jurisdiction.  A motion to dismiss under Fed. R. Civ. P. 12(b)(1) can challenge a plaintiff's complaint either on its face or on the factual truthfulness of its assertions.  Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).  In the present case, the Defendants have not specified whether they are challenging the Complaint on its face or based on the sufficiency of the facts alleged.  Considering that the Defendants have submitted affidavits and exhibits in support of their argument that subject matter jurisdiction is lacking, the Court considers their motion to be a factual challenge.

---

[4] Defendants also claim that the Plaintiff's reliance on the Declaratory Judgment Act, 28 U.S.C. §§ 2102-2202, is misplaced because it is a procedural statute and is not a grant of independent jurisdiction.  (Def.'s Mem., p. 14 fn. 8).  However, the Plaintiff does not rely solely on the Declaratory Judgment Act for jurisdiction in this case, but rather relies on federal question jurisdiction because the interpretation of a contract with the federal government is a question of federal common law.  Therefore, the Court denies the Defendants' arguments regarding the Declaratory Judgment Act.

Here, jurisdiction over the Plaintiff's case derives from three sources.  First, 28 U.S.C. § 1346 grants jurisdiction to federal district courts when the United States is a defendant and the contract dispute places less than $10,000 at issue.  Second, 28 U.S.C. § 1331 grants jurisdiction to district courts in "all civil actions arising under the Constitution, laws, or treaties of the United States."  Third, the ABC Agreement states that disputes regarding the settlement can be brought by initiating "a proceeding in any federal district court."  ABC, 760 F. Supp. at 809-810.

In this case, the government is the defendant and the parties are engaged in a contractual dispute regarding less than $10,000 because it is about the applicability of the ABC Agreement.  Moreover, the Plaintiff also raises claims under the laws of the United States regarding the applicability of certain federal immigration laws granting the Court jurisdiction under 18 U.S.C. § 1331.  Lastly, the Plaintiff claims that the Defendants denied him rights and benefits of the ABC Agreement when it refused to find that he was a member of the ABC class meaning that the Plaintiff can bring his claim in "any federal district court." [5]  For these reasons, this Court has subject matter jurisdiction over the Plaintiff's claims.

The Defendants contend that this Court lacks subject matter jurisdiction over the Plaintiff's claims because the Defendant waived his right to challenge the finding of his ABC ineligibility by signing a waiver. [6]  However, the determination of whether the waiver bars the

---

[5] In addition, the Government could be described as having waived jurisdiction challenges in the ABC Agreement itself.  The ABC Agreement states that class member can bring suit to enforce the settlement agreement by initiating "a proceeding in any federal district court."  ABC, 760 F.Supp. at 809-10.  Moreover, the Agreement provides that the Defendants cannot "contest the jurisdiction of [any federal district] court to hear any such claim."  Id.  The ABC Agreement limits suits to "any claim regarding the denial of any such right or benefit (including dispute over membership in the class)."  Id.  Here, the Plaintiff challenges the Defendants' refusal to consider him to be a member of the ABC Agreement.  Therefore, he disputes the determination that he is not a member of the class which is clearly listed under the ABC Agreement as a proper challenge that can be brought in federal district court.

[6] The Defendants additionally argued at oral argument that paragraph 19(b) of the ABC Agreement divests this Court of subject matter jurisdiction because it requires that the Plaintiff appeal the ABC determination within thirty days.  However, the Court disagrees with this argument.  Paragraph 19(b) reads:

> b. STAY PENDING JUDICIAL REVIEW. Defendants will stay the deportation of class members denied any of the rights or benefits of this agreement (including membership in the class and eligibility to apply)

Plaintiff's claim is in the nature of an affirmative defense and does not strip this Court of jurisdiction.   Just like parties cannot confer federal jurisdiction through a contract, parties cannot limit a court's jurisdiction through a contract.  See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (explaining that, because federal subject matter jurisdiction is based on the United States Constitution and federal statute, parties cannot of their own accord confer subject matter jurisdiction on a federal court, a party cannot waive it by failing to challenge it early in proceedings, and principals of estoppel do not apply). As courts have stated in cases where parties challenge subject matter jurisdiction based on forum selection clauses, "[p]rivate parties cannot defeat the subject matter jurisdiction of the federal courts by means of a forum-selection clause, any more than they could, by the same means, confer such jurisdiction on this court in a case in which diversity or a federal question were lacking."  Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F.2d 393, 402-03 (S.D. N.Y. 2000) (citing Ins. Corp. of Ireland, 456 U.S. at 702).  Thus, the waiver does not eliminate the Court's subject matter jurisdiction, but instead gives rise to an affirmative defense regarding whether the Court should exercise such jurisdiction.  S.M. ex. rel. v. West Contra Costa County Unified School Dist. Financing Corp., 2009 WL 1033826, at *3 (N.D. Cal. Apr. 16, 2009) ("A release, however, is an affirmative defense and does not go to the issue of subject matter jurisdiction"); United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Indus. And Serv. Workers Int'l Union v.

---

for 30 days from the date of such denial to permit the applicant to pursue an action in federal court, except that persons ordered deported pursuant to 8 U.S.C. § 1251(a)(4)(B) [8 U.S.C. § 1251(a)(2)(A)(iii) as amended by Public Law 101-649] shall not have their deportations stayed by virtue of this agreement.

ABC, 760 F.Supp. at 806.  This provision requires that the deportation of class members must be stayed for 30 days in order to allow an appeal of the ABC agreement in federal court.  However, this does not mean that an ABC determination must be filed within that time frame.  Rather, the provision deals with deportation not the timeline for appeals.

Carlisle Power Transmission Prods., Inc., 489 F.Supp.2d 924, 930 (D. Minn. 2007) (citing Fed.

R. Civ. P. 8(c) ("Release and waiver, of course, are affirmative defenses")).

Since the Court finds that the issues raised by the waiver are in the nature of an

affirmative defense, the Court will consider the Defendants' argument in the context of a

dispositive motion.  In support of their waiver arguments, both parties have submitted and relied

upon materials outside of the Complaint itself.  Generally, materials outside the pleadings cannot

be considered on a Rule 12 motion to dismiss, although a court may consider the complaint,

matters of public record, orders, materials embraced by the complaint, and exhibits attached to

the complaint in deciding a motion to dismiss.  See Porous Media Corp. v. Pall Corp., 186 F.3d

1077, 1079 (8th Cir. 1999).  Therefore, the Court analyzes the Defendants' waiver argument

under the standard of review applicable to a motion for summary judgment. See Fed. R. Civ. P.

12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56").

Summary judgment is appropriate only when the evidence demonstrates that there are no

genuine issues of material fact such that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A

disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of bringing forward sufficient evidence to

establish that there are no genuine issues of material fact and that the movant is entitled to

judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence

must be viewed in the light most favorable to the nonmoving party, and the nonmoving party

must be given the benefit of all reasonable inferences to be drawn from the underlying facts in

the record.  Mirax Chemical Products Corp. v. First Interstate Commercial Corp., 950 F.2d 566,

569 (8th Cir. 1991). The nonmoving party may not rest on mere allegations or denials in its

pleadings but must set forth specific evidence-based facts showing the existence of a genuine

issue.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The movant is entitled to

summary judgment where the nonmoving party has failed "to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial."  Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a

complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Id. at 323.

**B.     Discussion**

On April 11, 2007, USCIS interviewed the Plaintiff regarding his eligibility for ABC

benefits.  After the interview, the Plaintiff signed a form waiving his right to challenge the ABC

ineligibility finding in federal Court.  (Def.'s Mem., p. 14, Ex. C).  The waiver in its entirety

reads:

> I understand that the INS has determined that I am ineligible for benefits of the ABC
> settlement agreement for the reasons set out above.  I further understand that I have 30
> days in which to challenge the determination in federal court.  I wish to waive this 30-day
> period in order to complete my removal.

(Def.'s Mem., Ex. C).

Here, the central issue is whether the Plaintiff waived his rights to challenge the ABC

determination by the Government.  The Defendants' argue that the waiver signed by the Plaintiff

in April 2007 effectively terminated his rights to challenge the ABC determination in federal

court. On the other hand, the Plaintiff argues that the waiver was not voluntary because it was not read or written in Spanish so that the Plaintiff could understand it.

Waiver requires a voluntary and "intentional relinquishment of a known right." United States v. Olano, 507 U.S. 725, 733 (1993). A number of courts have held that waivers in the immigration context must be knowing and intelligent. See Bayo v. Napolitano, 593 F.3d 495 (7th Cir. 2010) (finding where an immigrant seeks rights under the Visa Waiver Program ("VWP"), and has signed the required document waiving "any rights to review or appeal" by an ALJ, "an alien's waiver through the VWP of the due process right to which he or she would otherwise be entitled must be done both knowingly and voluntarily")(emphasis added); Reyes-Vasquez v. Ashcroft, 395 F.3d 903 (8th Cir. 2005) (holding that when analyzing whether an alien waived his right to a hearing before an immigration judge, "the record must contain some evidence that the alien was informed and accepted its terms"); United States v. Gallardo, 495 F.3d 982 (8th Cir. 2007) (finding that an alien's waiver of her rights conveyed in Miranda warnings must be made "voluntarily, knowingly, and intelligently").

Plaintiff alleges that his purported waiver in this case was not voluntary or intentional because at the April 11, 2007 interview he did not speak English well, he was not represented, and he did not receive translated explanations of the process and his rights in his native language of Spanish. (Pl.'s Mem., p. 16).

In support of its argument, the Defendants contend that the Plaintiff does not offer any support for his assertion that he did not understand what occurred during the interview when he signed the waiver. The Defendants have also attached a declaration of the Chicago Asylum Office Director, Mr. Madsen, stating that Plaintiff would likely have been given the opportunity to reschedule the interview in order to bring an interpreter. Mr. Madsen stated that he is

"confident that had Mr. Molina not been able to participate competently in his interview in English, I would have noted as such in his file and given him an opportunity to reappear for another interview with an interpreter of his choosing." (Madsen Declaration ¶ 2). However, the Madsen Declaration concedes that Mr. Madsen "does not recall the specifics of Mr. Molina's interview." (Madsen Declaration ¶ 1).

In response, the Plaintiff offers the declaration of Brian J. Blackford, the Plaintiff's former attorney, to support his contention that the waiver was not knowing and voluntary since he did not understand the rights he was waiving. Mr. Blackford attended the March 14, 2011 interview with Mr. Molina at the USCIS. Due to language barriers, the interview had to be conducted using a Spanish translator because the Plaintiff does not read, write or speak in the English language. (Blackford Declaration [Doc. No. 37] ¶ 3). Moreover, the Plaintiff notes that the waiver form, which is attached to the Defendants' memorandum as Exhibit C, includes a provision where an asylum officer certifies whether notice was given in the proper language. The form reads "I explained and/or served this Notice to the alien in ENGLISH/SPANISH (circle the appropriate language)." However, in the instant case, the provision of the form is blank. Furthermore, the Plaintiff points out that the Defendant appealed the ABC determination two weeks after the decision when he obtained counsel which demonstrates that he did not intend to waive his rights.

Based on the various exhibits provided by the parties, the Defendants have failed at this time to establish that no genuine issues of material fact exist. Here, the primary evidence relied upon by the Defendants is the Madsen Declaration. However, the Court finds that this declaration is not controlling because Mr. Madsen himself agreed that he "does not recall the specifics of Mr. Molina's interview." (Madsen Declaration ¶ 1). As such, he has no specific

knowledge regarding Mr. Molina's interview nor whether Mr. Molina actually exhibited signs that he understood his rights and the consequences of waiving them.  Additionally, the circumstantial evidence provided by the Plaintiff creates a reasonable inference to question whether the waiver was knowing and voluntary to create a genuine issue of material fact.  The Blackford Declaration constitutes circumstantial evidence that the Plaintiff does not understand English and requires language assistance.   Moreover, the specific waiver form signed by the Plaintiff does not state in what language the asylum officer explained the waiver to the Plaintiff.  At this stage in the proceedings, no admissible evidence beyond supposition has been presented to show that the waiver was explained to the Plaintiff in Spanish or that he otherwise understood what was read to him in English.  Lastly, two weeks after the USCIS issued its ABC determination, the Plaintiff appealed the decision after obtaining the assistance of counsel.  Viewing the present record in the light most favorable to Plaintiff, as the Court must on a summary judgment motion, a genuine issue of material fact exists as to whether the Plaintiff knowingly and voluntarily waived his right to challenge the ABC determination in court.[7]

Based on the above reasoning, the Court recommends that the Defendants' motion to dismiss for lack of subject matter jurisdiction be denied.   The Court also recommends denying summary judgment to the Defendants on their affirmative defense of waiver at this stage of the litigation.

## IV.     FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

### A.     Standard of Review

---

[7] Additionally, the Court notes that the waiver itself arguably was not intended to waive all of the Plaintiff's rights to challenge the ABC determination in federal court under the ABC Agreement.  Here, the waiver was signed after the Plaintiff underwent an interview to qualify for ABC asylum.  Thus, it is unclear whether the waiver was meant to apply to the Plaintiff's ability to appeal just that ABC determination or whether the Plaintiff in fact waived all his rights to sue under the ABC Agreement.  The waiver agreement is entitled "Waiver of 30-day Period Allowed to Challenge this Finding in Federal Court."  (Def.'s Mem., Ex. C).  The waiver remains silent on whether all rights to sue in federal court to enforce the ABC Agreement are waived.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. (citations and quotations omitted).   Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id.

When analyzing a 12(b)(6) argument, courts "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).   Next, courts look at any remaining well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." Id.  The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See id. at 1950, 1952.

When analyzing a Plaintiff's complaint, the Court must take the plaintiff's factual allegations as true. Id. at 1949-50.  However, a "formulaic recitation of the elements of a cause of action" is insufficient for a complaint to survive a motion to dismiss. Id.  Still, facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555.  In addition, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation in isolation is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

**B.**     **Discussion**

15

The Defendants make two arguments in support of dismissing the Plaintiff's claim under Fed. R. Civ. P. 12(b)(6).  First, the Defendants contend that all the Plaintiff's claims should be dismissed because the Plaintiff's application for ABC benefits was not timely filed.  Second, the Defendants argue that the Plaintiff's claim for mandatory injunctive relief fails as a matter of law.[8]

## 1.     Timeliness of Application

The Defendants contend that the Complaint should be dismissed because it is based on the erroneous assumption that the Plaintiff is even entitled to ABC benefits in the first instance. According to the Defendants, the USCIS did not receive the Plaintiff's asylum application until after the filing deadline of December 30, 1991.  (Def.'s Mem., p. 17).   Plaintiff contends he mailed his application on December 30, 1991, but the USCIS asserts it did not receive the application until January 2, 1992.  (Def.'s Mem, p. 18).  Thus, the Defendants contend that, as a matter of law, the Plaintiff sent in his ABC registration form and Application for Asylum late.[9]

The Plaintiff responds that he has alleged enough facts in his Complaint to survive a 12(b)(6) motion to dismiss on his allegation that the Plaintiff timely registered under the ABC

---

[8] The Defendants additionally seek to dismiss Plaintiff's request to be immediately released from custody pending the resolution of his claims in this Court.  However, the Court need not consider this argument since the Plaintiff has already been deported back to Guatemala and is no longer in custody.  Both parties agree that this request has been rendered moot.

[9] In a footnote, the Defendants argue in the alternative that even if the Court finds that the application was timely mailed, the Court should still dismiss the Plaintiff's claim under Fed. R. Civ. P. 12(b)(6).  The Defendants argue that the Plaintiff's efforts at obtaining ABC eligibility in order to obtain special rule cancellation of removal through NACARA will likely fail because Plaintiff's admissibility is unlikely.  (Def.'s Mem., p. 21 n. 15). The Defendants argue that the Plaintiff "is arguably inadmissible as an alien who has assisted or otherwise participated in an act of torture or extrajudicial killing."  Id.   According to the Defendants, under NACARA, certain persons are ineligible for special rule cancellation of removal.  Such persons include aliens who are "deportable under section 1227(a)(4)(D)."  8 U.S.C. § 1231(b)(3)(B)(i).  Section 1227(a)(4)(D) further makes "deportable" any alien described in "clause . . . (iii) of section 1182(a)(3)(E)."  Section 1182(a)(3)(E)(iii) reads:

> **(iii) Commission of acts of torture or extrajudicial killings**
> Any alien who, outside the United States, has committed, ordered, incited, assisted, or otherwise participated in the commission of – (I) any act of torture, as defined in section 2340 of Title 18; [. . .] is inadmissible.

However, whether the Plaintiff committed any acts of torture or extrajudicial killings in not presently before the Court.  Furthermore, such a determination is a factual decision better left for a properly briefed motion for summary judgment or for trial.

Agreement.  First, the Plaintiff asserts that he signed his asylum application on December 20, 1991 and that he signed his ABC registration form on December 30, 1991.  (Am. Compl. ¶¶ 35, 64-65).  Moreover, both documents were mailed to INS on either December 30th or December 31st of 1991.  Id.  Second, the Complaint alleges that the Plaintiff registered for the benefits with the assistance of a man named Luis who mailed the documents on the Plaintiff's behalf by December 31, 1991.  (Am. Compl. ¶¶ 4-5).  Third, Plaintiff's fingerprint card, attached to the Complaint, was completed prior to December 31, 1991.  This fingerprint card was signed, dated and verified by the immigration agent who took Plaintiff's fingerprints on December 30, 1991 and has an "ABC" notation upon it.  (Am. Compl. ¶ 70).

The Court concludes that the Plaintiff has asserted enough facts to meet the standards of Iqbal and Twombly in order to allege that he mailed his application on or before December 31, 1991.[10]  Here, the Complaint alleges that the asylum application and the ABC registration form were both signed on December 30, 1991.   The Plaintiff's fingerprint card was signed and dated by the agent who took the Plaintiff's fingerprints on December 30, 1991.  Moreover, the Plaintiff alleges that the documents were mailed before December 31, 2011.  The Court takes judicial notice of the fact that the New Year's Day Holiday was the next day, January 1, and there would have been no U.S. Mail service that day.  Therefore, if the application was received on January 2, 1992, the Plaintiff's application could readily have been mailed on December 30, 1991 or December 31, 1991 as he alleges.  These facts nudge the Plaintiff's allegations regarding whether his ABC registration form was timely "across the line from conceivable to plausible."  Iqbal, 129 S.Ct. at 1950.

---

[10] In its reply memorandum, the Defendants contend that even these numerous factual assertions do not meet the standards of Fed. R. Civ. P. 12(b)(6) because they are inconsistent and not genuine.  (Def.'s Reply, p. 8).  However, at this stage in the litigation, the Court must take the plaintiff's factual allegations as true.  Iqbal, 129 S.Ct. at 1949-50.  Thus, the Court must leave the determination of whether the Plaintiff's assertions regarding when he mailed the documents are inconsistent with other statements for a later date.

However, an issue still remains as to whether the Defendant's application was late as a matter of law even though it was mailed by December 31, 1991.  Answering this question necessarily turns on the whether the ABC Agreement required that the INS <u>receive</u> the application by December 31, 1991 or whether the applicant <u>mail</u> the application by December 31, 1991.  No reported case states that the ABC registration must be received by December 31, 1991.

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." <u>Jeff D. v. Andrus</u>, 899 F.2d 753, 759 (9th Cir. 1990).  Federal common law governs the interpretation and construction of a contract between the United States and another party.  See <u>United States v. Applied Pharmacy Consultants, Inc.</u>, 182 F.3d 603, 604 (8th Cir. 1999).

> A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations.  Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.

<u>Klamath Water Users Protective Ass'n v. Patterson</u>, 204 F.3d 1206, 1210 (9th Cir. 1990).   "If the words of the contract are capable of more than one objectively reasonable interpretation, the words are ambiguous."  <u>Baldwin v. University of Pittsburgh Medical Center</u>, 636 F.3d 69, 76 (3rd Cir. 2011).

In this case, the contract remains silent as to whether the ABC registration documents have to be received by December 31, 1991. The relevant provision in the ABC Agreement states:

> 2. CLASS MEMBERS ELIGIBLE FOR DE NOVO ASYLUM ADJUDICATION. The following class members . . . will be afforded a de novo, unappealable asylum adjudication before an Asylum Officer, including a new interview, under the regulations in effect on October 1,1990: [ . . .]
>
> > b. Guatemalans who indicate to the INS in writing their intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the

benefits of this agreement, within the period of time commencing July 1, 1991 and ending on December 31, 1991.

ABC, 760 F. Supp. at 799-800.

The contract language itself is ambiguous as to whether the registration form must be received by December 31, 1991 or mailed by December 31, 1991.  As the Plaintiff points out, the language of the ABC Agreement does not state that the applicant "must ensure receipt" of the application by December 31 or that the INS "must receive" the documents by December 31.  The relevant language reads that the alien must "indicate to the INS . . . their intent to apply . . . within the period of time."  This language implies that the alien has to mail the document by December 31, 1991 rather than make sure that that the INS receives the documents by that date.[11]

Recent case law supports this interpretation.  The Court reads Chaly-Garcia v. United States, 508 F.3d 1201 (9th Cir. 2007) to mean that the contract provisions in the ABC Agreement should be interpreted so that the "intent" of the party applying for the benefits is effectuated.  In Chaly-Garcia, the court provided some guidance as to when a class member has indicated intent.  The Court answered whether an asylum application rather than an ABC registration form indicated an alien's intent to receive ABC's benefits.  The Court held that the plaintiff did not have to specifically refer to the ABC Agreement and did not have to specifically request a de

---

[11] Defendants additionally contend that INS regulations support its view.  8 C.F.R. § 103.2(a)(7)(i) reads:

   (7) Receipt date--

      (i) General. An application or petition received in a USCIS office shall be stamped to show the time and date of actual receipt and, unless otherwise specified in part 204 or part 245 or part 245a of this chapter, shall be regarded as properly filed when so stamped, if it is signed and executed and the required filing fee is attached or a waiver of the filing fee is granted. An application or petition which is not properly signed or is submitted with the wrong filing fee shall be rejected as improperly filed. Rejected applications and petitions, and ones in which the check or other financial instrument used to pay the filing fee is subsequently returned as non-payable will not retain a filing date. An application or petition taken to a local USCIS office for the completion of biometric information prior to filing at a service center shall be considered received when physically received at a service center.

However, these regulations do not implement the ABC Agreement itself, which is the controlling document in this case. Nor do the Defendants cite any authority as to why this provision applies to the ABC Agreement.

novo asylum adjudication in order to indicate intent to receive ABC benefits.  <u>Chaly-Garcia</u>, 508

F.3d at 1204.   The Court interprets this case to mean that that the ABC Agreement should be

interpreted liberally such that it only requires that an alien demonstrate an intent to take

advantages of the benefits of the ABC Agreement within a certain time period.  Mailing the

document within this time period indicates such intent.

        To determine whether a contract is ambiguous, courts may consider extrinsic evidence

including "the conduct of the parties that reflects their understanding of the contract's meaning."

<u>In re New Valley Corp.</u>, 89 F.3d 143, 150 (3rd Cir. 1996).

        In this case, the USCIS's own policies after <u>Chaly-Garcia</u> would likely have found an

application received on January 2, 1992 to be timely which supports an interpretation of the ABC

Agreement requiring  ABC registration forms to be mailed by December 31, 1991, rather than be

received by December 31.  A memorandum from USCIS Director Joseph Langlois states that

"[a]n applicant may establish registration for ABC benefits by credible testimony alone."

(Langlois Memo, Am. Compl., Ex. 14, p. 2).  Furthermore, "asylum officers should avoid relying

extensively on technical questions such as whether the applicant has 'registered' or if the

applicant can provide detailed descriptions of the ABC registration form or process."  <u>Id</u>.

Likewise, in a memorandum, Bo Cooper, the General Counsel for the INS explained that "[t]o

allow sufficient time for postal processing, the receipt for Guatamalans should be dated no later

than January 31, 1992 . . . (one month has been added to the filing deadline to account for delays

in retrieving mail for the post office box.)"  (Cooper Memo, Amended Compl, Ex. 11, p. 2).

        Based on the above, the Court determines that the Plaintiff has asserted enough facts to

survive a motion to dismiss that he is entitled to ABC class benefits.   Therefore, it recommends

that the Defendants' motion to dismiss be denied as to this claim.

2.      **Injunctive Relief**

The Defendants contend that the Plaintiff "makes only perfunctory references to 'injunctive relief'" throughout the Complaint.  The Defendants argue that these conclusory references are not enough.   According to the Defendants, the injunction requested by the Plaintiff is mandatory because it affirmatively requires a specific action on the part of the Defendants.  (Def.'s Mem., p. 22).  As the Defendant correctly points out, to obtain a permanent injunction, the Plaintiff must make the same showing as a preliminary injunction except that a party seeking a permanent injunction has to show actual success on the merits.  (Def.'s Mem., p. 23) (citing Planned Parenthood, Minnesota, North Dakota, South Dakota v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008).  After a court finds actual success on the merits, it must then balance the following factors to determine whether a permanent injunction should issue:  (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest.  Id. (citing Planned Parenthood, 530 F.3d at 729 n.3).  In this case, the Defendants assert that the Amended Complaint is insufficient because the Plaintiff does not even cite the basic elements of a claim for injunctive relief.  Specifically, the Defendants contend that the Plaintiff does not discuss a balance of harms or address the public interest.

In response, the Plaintiff contends that he only seeks injunctive relief pursuant to his claims for breach of contract and under the APA and does not plead a cause of action for injunctive relief.  As such, the Plaintiff maintains that at some stage in the litigation he will have to demonstrate his entitlement to injunctive relief, but not at the pleading stage.

Courts "generally contemplate[d] [permanent injunctions] at the conclusion of trial, at the remedy phase of a legal proceeding."  G.E. Capital Commercial, Inc. v. Wright & Wright, Inc.,

2009 WL 5173954 at *9 (N.D. Tex. Dec. 31, 2009).  A permanent injunction requires a showing

of actual success on the merits.  Planned Parenthood, Minnesota, North Dakota, South Dakota,

530 F.3d at 732.  It is impossible for the Plaintiff to demonstrate actual success on the merits

"until judgment as a matter of law is imposed in favor of Plaintiffs or until Plaintiff have

prevailed at trial on the merits." G.E. Capital Commercial, Inc., 2009 WL 5173964 at *9.

Furthermore,  "[a] claim for permanent injunction should not be stricken at the pleading stage

when the underlying claim is not dismissed." Securities Ex. Comm. v. Life Wealth

Management, Inc., 2010 WL 4916609 (C.D. Cal. Nov. 24, 2010) (citing In re Lloyd's Am. Trust

Fund Litig., 954 F.Supp. 656, 682 (S.D. N.Y. 1997); see also Donnelly Garment Co. v. Int'l

Ladies Garment Workers' Union, 99 F.2d 309, 312 (8th Cir. 1938).

Here, Plaintiff has asserted enough facts to survive a motion to dismiss on his injunctive

claims.  Plaintiff is not seeking a preliminary injunction or a temporary restraining order.   The

court construes Plaintiff's claim for injunctive relief to be for a permanent injunction on his ABC

settlement benefits only.  Consequently, the Plaintiff's claims for permanent injunctive relief

depend upon the success of his underlying declaratory judgment claims.  As such, for the

purposes of the present Rule 12(b)(6) motion, if his declaratory judgment claims survive so do

his claims for permanent injunctive relief.  The Court has already determined that the Plaintiff's

declaratory relief claims survive a Rule 12(b)(6) motion to dismiss based on the Plaintiff's

allegations regarding his qualification for ABC class benefits.  Therefore, the Court recommends

that the Defendant's motion to dismiss the Plaintiff's injunctive relief also be denied.

## IV.    VENUE

### A.    Standard of Review

Venue in federal question cases is governed by 28 U.S.C. § 1391(b).  Under § 1391, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

An action against a Federal officer or agency of the United States is proper in any judicial district in which (1) a defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e).  A defendant seeking dismissal for improper venue under Fed. R. Civ. P. 12(b)(3) bears the burden of demonstrating that the plaintiff's chosen venue is improper.  United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947).

The Defendants request that if the motions to dismiss are denied, the Court then transfer the case to the District of Nebraska.  28 U.S.C. § 1404(a) states that "for the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer motions "should not be freely granted."  In Re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982).   "[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 695 (8th Cir. 1997).  The movant faces a "heavy burden" to demonstrate why a motion to transfer venue should be granted. Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F.Supp. 638, 641 (D. Minn. 1996).  The movant must show that "the balance of factors strongly favors" transfer.  Id. (citations omitted).

Moreover, 1404(a) "provides for transfer to a <u>more</u> convenient forum, not simply one that is equally convenient to the one originally selected." <u>Eagle's Flight of Am., Inc. v. Play N Trade Franchise, Inc.</u>, 2011 WL 31726 at *4 (D. Minn. 2011).

**B.    Discussion**

The Defendants argue that the Court should transfer the case because the Plaintiff cannot satisfy the venue criteria since this case has no connection with Minnesota except that the Plaintiff's lawyers practice here.  The Plaintiff previously resided in Omaha, Nebraska before being deported.  No facts relating to this case took place in Minnesota.  Moreover, the Defendants contend that while paragraph 35 in the ABC Agreements provides ABC claimants with jurisdiction in "any federal district court" may prohibit the government from contesting the jurisdiction of the Federal district court, it does not explicitly state that venue requirements should be superceded.  (Def.'s Mem. p, 27).  Accordingly, the Defendants ask that the case be transferred to Nebraska.

In response, the Plaintiff relies upon the language of the ABC Agreement which reads:

> If an individual class member who has sought the benefits or rights of this agreement raises any claim regarding the denial of any such right or benefit (including a dispute over membership in the class) . . . such individual is entitled to seek enforcement of the provisions hereof by initiating a separate proceeding **in any federal district court**, and the Defendants will not contest the jurisdiction of such court to hear any such claim . . . If the federal district court nonetheless declines to hear the class member's claims, he shall be entitled to bring such matter before this Court and the Court will retain jurisdiction under this agreement over the class member's claims . . .

<u>ABC</u>, 760 F.Supp. at 809-810.

The Court finds the Defendants' arguments unconvincing.  The contractual settlement provision controls in this case.  Where the "Defendants have contractually agreed to a particular venue, Section 1391 is irrelevant."  <u>ELA Medical, Inc. v. Arrhythmia Management Assoc., Inc.</u>, 2007 WL 892517 (D. Minn. Mar. 21, 2007).  "Venue, like personal jurisdiction, are both

'personal privileges of the defendant . . . and both may be waived by the parties.'" Id. (citing

Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979)); see also Northwestern Nat. Ins.

Co. v. Donovan, 916 F.2d 372, 375-77 (7th Cir. 1990).   Even though the contractual provision

does not mention venue specifically, the text of the provision plainly shows that the parties

contemplated that ABC class members could bring their claim in any federal district court.  If a

federal district court believed that transfer to another district was appropriate based on the facts

of the case and "declines to hear the class member's claim . . . he shall be entitled to bring such

matter before this Court [the Northern District of California] and the Court will retain

jurisdiction under this agreement over the class member's claims." ABC, 760 F.Supp. at 809-

810.

 Turning to the Defendants' request that the Court transfer this case to the District of

Nebraska, the Court finds transfer to be unwarranted.  A "forum selection clause is 'a significant

factor' that figures centrally in the district court's calculus in a motion to transfer, and section

1404(a) affords the district court much discretion in deciding such motions." Terra Int'l Inc, 119

F.3d at 697.  Courts consider three factors when deciding a motion to transfer: (1) the

convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.

Id. at 691.

 In the instant case, the convenience of the parties does not weigh in favor of transfer.

The Plaintiff lives in Guatemala. Therefore, any forum will be inconvenient for him.  The

Defendants are employees of the United States Government.  As the Plaintiff points out, he had

interactions with the Defendants' employees in California, Nebraska, and Washington, D.C. and

the facts giving rise to the Plaintiff's application for ABC benefits all took place in California

which means that no matter where this case is heard, in Minnesota or in Nebraska, potential

witnesses will have to travel to present testimony.  In fact, Defendants' arguments that the case must be venued in Nebraska where the Plaintiff resided and where some of the Defendants' relevant employees reside, would preclude an ABC enforcement claim even in the Northern District of California which originally approved the ABC settlement and expressly retained jurisdiction over any ABC claims.

As to the witnesses likely to testify at trial, the Court focuses on inconvenience caused to non-party witnesses since "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." Advanced Logistics Consulting, Inc. v. Enyeart LLC, 2009 WL 1684428 at *5 (D. Minn. Jun. 16, 2009) (citations and quotations omitted).  The Defendants have the burden of showing that venue is not proper in Minnesota; however, they have not provided any concrete examples of non-party witnesses that will be inconvenienced by travel to Minnesota to testify.

The last factor, the interests of justice, requires an examination of judicial economy, the plaintiff's choice of forum, docket congestion, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, and each court's relative familiarity with the applicable law. Terra Int'l, 119 F.3d at 696.  As such, this factor requires consideration of the ABC Agreement and the Plaintiff's choice of forum.   In the ABC Agreement, the Defendants agreed that claims could be brought "in any federal district court."  Thus, they could have foreseen the possibility of litigating in inconvenient forums.  As such, they set themselves up for the chance of litigating suits across the country in various forums.   As the Court noted in InCompass It, Inc. v. XO Communications Servs. Inc., 2011 WL 2037603 (D. Minn. May 24, 2011),

> Whatever 'inconvenience' [a party] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In

such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

Id. at *5 (citing  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17-18 (1972).

Since the Defendants have not demonstrated to the Court that another forum provides a significantly more convenient forum for the litigation of this suit, the Court recommends denying the Defendants' motion to transfer venue.

## VI.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

1.     IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss [Docket No. 26] be DENIED.

Dated:  September 1, 2011                                    s/Leo I. Brisbois
                                                            LEO I. BRISBOIS
                                                            United States Magistrate Judge

N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 15, 2011,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.